IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

KEVIN FLOYD,

    Plaintiff,

v.

BETTY GIBBS; and HARRY SIZEMORE,

    Defendants.

CIVIL ACTION NO.: 5:18-cv-28

## **ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brought this 42 U.S.C. § 1983 action while incarcerated at the Coffee Correctional Facility in Nicholls, Georgia, in order to challenge certain conditions of his confinement. Doc. 1. For the reasons below, I **RECOMMEND** the Court **DISMISS** Plaintiff's request for money damages against Defendants in their official capacities. However, Plaintiff's deliberate claim shall proceed against Defendants Gibbs and Sizemore. Consequently, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order shall be served upon Defendant Gibbs and Defendant Sizemore by the United States Marshal without prepayment of cost.

## **BACKGROUND**[1]

Plaintiff suffers from two chronic medical conditions—lower spine spina bifida and scoliosis. Doc. 1 at 5–6. On May 30, 2017, Dr. G. Augustin, a medical doctor at the Coffee Correctional Facility ("CCF"), confirmed Plaintiff's diagnoses after viewing an x-ray. Id. Due to these medical conditions, Plaintiff was given a "bottom bunk profile" while at CCF. Id.

---

[1] During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

Plaintiff's "bottom bunk profile" indicated to prison staff that he should be assigned only to a bottom bunk.[2]

Plaintiff was housed in "segregation (the hole)" at CCF from October 11, 2016 until January 3, 2018. Id. On January 3, 2018, prison officials moved Plaintiff out of segregation and assigned him to a top bunk in dorm 8NN in building 8. Plaintiff spoke with Defendant Gibbs, but "she would not enforce [his] bottom bunk status," as that would necessitate moving another inmate out of a bottom bunk. Id. Plaintiff alleges Defendant Gibbs showed "preferential treatment" to some inmates in dorm 8NN because these inmates "were orderlies." Id. Though those inmates did not possess a bottom bunk profile and Plaintiff did, Defendant Gibbs refused to reassign those inmates to a top bunk. Id. Plaintiff then complained to Defendant Sizemore, the unit manager. Id. Plaintiff alleges that "getting off and on the top bunk[] caused greater back pain and strain" and "made it difficult to even walk [for] any length of time—especially to chow across the yard." Id. He experienced general difficulty moving and sleeping. Id.

Plaintiff filed Grievance Number 260387 on February 5, 2018. Id. Assistant Warden Ricky Stone denied that grievance around February 23, 2018, and Plaintiff appealed. Id. Plaintiff alleges his appeal was denied. Id. at 5.

On February 14, 2018, Dr. Augustin "reconfirmed" Plaintiff's bottom bunk profile.[3] Id. at 56. The next day, Defendant Gibbs moved Plaintiff "from dorm 8NN, where he was [assigned to] a top bunk, to dorm 8QQ, on a bottom bunk." Id. Though Defendant Gibbs moved him,

---

[2] According to Plaintiff, all profiles "must be renewed annually" regardless of the seriousness of the condition. Doc. 1 at 5. Sabrina Taylor, a member of the CCF medical staff, renewed Plaintiff's bottom bunk profile on June 9, 2017. Id. Thus, Plaintiff's bottom bunk profile remained in effect from January 3, 2018 to February 15, 2018, the period of time at issue in his Complaint. Id.

[3] Plaintiff alleges both Defendants knew of Plaintiff's bottom bunk profile before the February 14, 2018 "reconfirmation." Id.

2

Plaintiff contends she "failed to remedy the issue-at-bar—the favoritism she showed un-profiled bottom bunk favorite inmates of hers." Id. at 6.

Plaintiff alleges Defendants' failure to immediately assign Plaintiff to a bottom bunk on January 3, 2018 and the 43-day delay in doing so constitute deliberate indifference to his medical needs. Plaintiff writes that this delay occurred only because Defendant Gibbs "did not want to upset her favorite, non-profiled inmates" by moving them to a top bunk in order to open space to move Plaintiff to a bottom bunk. Id.

On April 2, 2018, Plaintiff filed this action against Defendant Gibbs and Sizemore. Doc. 1 at 4. As relief, Plaintiff requests: (1) Defendant Gibbs be assigned to work somewhere other than building 8, "as she has been in [that] building too long and shows favoritism and preferential treatment to select inmates"; (2) an injunction preventing retaliation against Plaintiff for filing this action; (3) $10,750 in compensatory damages for the 43 days Plaintiff "was denied adequate medical care, [specifically] a bottom bunk for his back conditions," calculated at $250 per day; and (4) $21,500 (twice the value of the compensatory damages requested) in punitive damages. Id. at 6.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C.

§ 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose

factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Plaintiff's Requested Relief

Plaintiff does not indicate whether he brings his claims against Defendants in their individual or official capacities. Doc. 1. The Court construes Plaintiff's claims to be against Defendants in both their individual and official capacities. See Smitherman v. Decatur Plastics Prod. Inc, 735 F. App'x 692 (11th Cir. 2018); Torres v. Miami-Dade County, 734 F. App'x 688, 691 (11th Cir. 2018). However, Plaintiff cannot sustain a § 1983 claim for money damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state agency or a state officer in his official capacity is "no different

from a suit against the [s]tate itself," such defendants are immune from suit under § 1983. Id. at 71.

Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes Defendants from suits for money damages in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. Therefore, the Court should **DISMISS** all claims for monetary damages against Defendants in their official capacities. Plaintiff's requests for non-monetary relief shall continue against Defendants in their official capacities, and his requests for monetary damages shall continue against Defendants in their individual capacities.

## II. Plaintiff's Deliberate Indifference Claim

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Ross v. Corizon Med. Servs., 700 F. App'x 914, 916 (11th Cir. 2017) (quoting Estelle, 429 U.S. at 106).

Thus, in order to prove a deliberate indifference to medical care claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). As to the first component, a medical need is serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id.

Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[4] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

In the medical context, deliberate indifference may arise from both disputes about the quality of the medical treatment and from prolonged delays in providing medical treatment. "When the claim turns on the quality of the treatment provided, there is no constitutional

---

[4] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is inconsistent. Compare Goebert, 510 F.3d at 1327, with Bingham, 654 F.3d at 1176. In Melton, the Eleventh Circuit directly addressed this discrepancy and found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Accordingly, this Court will apply the "more than mere negligence" standard.

7

violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). Rather, a plaintiff must show more than "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" in order to support a claim of deliberate indifference. Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert, 510 F.3d at 1327; Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) ("Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours. . . .").

Plaintiff's Eighth Amendment deliberate indifference claim against Defendants should proceed. See Howell v. White, No. 1:13-cv-1161, 2013 WL 12216364, at *1 (N.D. Ga. June 11, 2013) (finding plaintiff-prisoner stated an adequate deliberate indifference claim based on defendants' refusal to assign him to a bottom bunk). Plaintiff alleges he suffers from lower spine spina bifida and scoliosis, that a CCF doctor diagnosed these conditions, and that the CCF doctor twice determined Plaintiff required a bottom bunk. Doc. 1 at 5–6; Burley v. Upton, 257 F. App'x 207, 210 (11th Cir. 2007) (dismissing a deliberate indifference claim when the defendants assigned the plaintiff to a top bunk for five days though the plaintiff had a bottom bunk profile in part because the plaintiff "never explicitly stated why he had a medical profile for a lower bunk"

and, though the district court inferred plaintiff required due to "lower back pain," an allegation of "lower back pain," without more, does not show a serious medical need); see also Faulkner v. Monroe Cty. Sheriff's Dep't, 523 F. App'x 696, 700 (11th Cir. 2013) (granting defendant's motion to dismiss a plaintiff's deliberate indifference claim based on prison officials' refusal to give the plaintiff a bottom bunk profile).

Here, Plaintiff does not merely allege he had a bottom bunk profile at the time prison officials assigned him to a top bunk; he also contends that he informed both Defendants of his bottom bunk profile and need. Doc. 1 at 5–6; Redding v. Georgia, 557 F. App'x 840, 844 (11th Cir. 2014) (suggesting that simply assigning an inmate to "a bunk contrary to his profile" shows only negligence); Hall v. Moore, No. 3:14-cv-140, 2015 WL 9946410, at *9 (N.D. Fla. Dec. 29, 2015) ("A defendant's knowledge of a medical pass, without more, is insufficient to establish deliberate indifference." (citing Redding, 557 F. App'x at 844)). However, Defendant Gibbs still refused to assign him to a bottom bunk (according to Plaintiff, only because she favored other inmates), and that Defendant Sizemore, once informed, delayed in responding to the issue. Id.; Holman v. Jones, No. 2:14-cv-115, 2017 WL 1349182, at *10 (M.D. Ala. Feb. 21, 2017) (granting summary judgment for defendants when the "undisputed evidence" showed plaintiff prisoner failed to "inform the segregation officers of his bottom bunk profile or his potential for a seizure"); Shaffer v. Maddox, No. 3:14-cv-070, 2014 WL 5878460, at *3 (S.D. Ga. Nov. 12, 2014) (dismissing a plaintiff's § 1983 action when plaintiff failed to inform defendants of his need for a bottom bunk). Finally, Plaintiff alleges he experienced difficulty moving and walking for any length of time due to continually "getting off and on the top bunk . . . ." Doc. 1 at 6. At this stage of litigation, these allegations are sufficient to allow Plaintiff's deliberate indifference claim proceed against both Defendants.

**CONCLUSION**

For the above-stated reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's request for money damages against Defendants in their official capacities. The Court **FINDS** that Plaintiff alleges a non-frivolous deliberate indifference claim against Defendants Gibbs and Sizemore. Consequently, a copy of Plaintiff's Complaint, doc. 1, shall be served upon Defendants Gibbs and Sizemore by the United States Marshal without prepayment of cost.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.**

# INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until60 days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes

of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant. Interrogatories are not to contain more than 25 questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate. Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### **ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest

Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of September, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA