FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 8:48 am, Jun 18, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

KEVIN FLOYD,

    Plaintiff,

v.

BETTY GIBBS; and HARRY SIZEMORE,

    Defendants.

CIVIL ACTION NO.: 5:18-cv-28

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement while incarcerated at Coffee Correctional Facility in Nicholls, Georgia. Doc. 1. On January 13, 2020, Defendants filed a Motion for Summary Judgment. Doc. 16. The Clerk of Court mailed a Notice to Plaintiff advising him that Defendants filed a Motion for Summary Judgment and that a response must be filed by February 3, 2020. Doc. 17. That Notice further advised Plaintiff that:

> 1.    If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone. To oppose a properly supported motion for summary judgment, you will probably need to rebut it with admissible evidence.

Id. Plaintiff filed no response to Defendants' Motion for Summary Judgment, and the Court received no indication this Notice or Defendants' Motion was undeliverable. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, I **RECOMMEND** the Court **GRANT as unopposed** Defendants' construed Motion to Dismiss, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Additionally, I **RECOMMEND** the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## PROCEDURAL HISTORY

On April 2, 2018, Plaintiff filed this action under 42 U.S.C. § 1983, complaining about his conditions of confinement while incarcerated at Coffee Correctional Facility ("CCF") in Nicholls, Georgia. Doc. 1. On September 10, 2019, the Court conducted the requisite frivolity review and found Plaintiff's claims for deliberate indifference to serious medical needs against Defendants Gibbs and Sizemore were not due to be dismissed at that time. Doc. 9 at 1. The Court issued an Order directing the United States Marshal to serve Plaintiff's Complaint upon Defendants Gibbs and Sizemore. Id. Defendants were served October 9, 2019. Docs. 12, 13. On January 13, 2020, Defendants filed a Motion for Summary Judgment, with Plaintiff's response due by February 3, 2020. Doc. 16. The Clerk of Court sent a Notice to Plaintiff at his last known address advising him that a motion for summary judgment had been filed and that he

2

was to file any desired response within 21 days. Doc. 17. There is nothing before the Court indicating this Notice did not reach Plaintiff. However, to date, Plaintiff has not filed a response to Defendants' Motion for Summary Judgment.

## BACKGROUND[1]

Plaintiff suffers from two chronic medical conditions—lower spine spina bifida and scoliosis. Doc. 1 at 5–6. On October 11, 2016, Plaintiff was placed in segregation. Doc. 1 at 5; Doc. 16 at 2. Plaintiff was transferred out of segregation on January 2, 2018 and was assigned a top bunk. Doc. 16 at 2. Plaintiff alleged in his Complaint that on January 2, 2018, he had a bottom-bunk profile, doc. 1 at 5, but Defendants assert Plaintiff had no such profile at the time and offer a witness declaration in support of that position. Doc. 16 at 2; Doc. 16-1 at 2. Plaintiff has not controverted Defendants' contention or evidentiary support, and, therefore, it is undisputed that Plaintiff had no bottom-bunk profile on January 2, 2018.

On February 13, 2018, Plaintiff filed Grievance Number 260387, complaining of his top bunk assignment.[2] Id. After filing Grievance Number 260387, Plaintiff saw Dr. Guy Augustin, a prison physician, on February 14, 2018. Doc. 16 at 2. On February 15, 2018, medical staff assigned Plaintiff a bottom-bunk medical profile. Id. That same

---

[1] The recited allegations are taken from Plaintiff's Complaint and Defendants' Statement of Material Facts. However, given that Plaintiff has not responded to Defendants' Motion for Summary Judgment, including Defendants' Statement of Facts, the Court need not accept Plaintiff's allegations as true.

[2] In their Statement of Material Facts, Defendants state Plaintiff filed Grievance Number "260887" on February 13, 2018. Doc. 16 at 2. In support of this assertion, Defendants cite to Plaintiff's Complaint. Id. In the part of Plaintiff's Complaint cited to, Plaintiff asserts he filed Grievance Number "260387" on February 5, 2018. Doc. 1 at 6. A copy of the grievance in question appears to be attached to Defendants' Motion for Summary Judgment. Doc. 16-1 at 10. This copy indicates the correct Grievance Number is 260387, which appears to have been filed on February 13, 2018. Id. The Court finds the correct grievance number is 260387, which was filed on February 13, 2018.

day, Plaintiff was relocated to a unit and bed that conformed with his bottom-bunk profile. Id. Plaintiff's grievance regarding his bunk assignment—Grievance Number 260387—was denied by the prison warden on February 20, 2018. Id. at 3; Doc. 16-1 at 8. Plaintiff appealed the warden's denial of his grievance to the Central Office of the Georgia Department of Corrections, but on April 2, 2018—before the Central Office responded to the appeal—Plaintiff filed this action. Doc. 1. Plaintiff's appeal was denied later, on April 11, 2018.[3] Doc. 16 at 3.

## DISCUSSION

### I. Plaintiff's Exhaustion of Administrative Remedies

In their Motion for Summary Judgment, Defendants argue Plaintiff failed to properly exhaust his administrative remedies as to his deliberate indifference to medical needs claim prior to brining this lawsuit. Doc. 16 at 6. In moving for summary judgment, Defendants rely on their Statement of Material Facts, copies of Plaintiff's grievances relevant to this issue, and three declarations sworn under penalty of perjury. Docs. 16, 16-1.

Exhaustion of administrative remedies is not ordinarily the proper subject for summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008). Accordingly, courts should treat exhaustion as having been raised under Federal Rule of Civil Procedure 12(b), then subject it to the rules and practices applicable to the most analogous Rule 12(b) motion. Id. at 1375–76. When assessing issues of exhaustion, it is proper for a judge to

---

[3] In their Statement of Material Facts, Defendants state Plaintiff filed a grievance on February 22, 2018, claiming he suffered from scoliosis and knee pain, and he was not getting adequate medical treatment, while making no mention of his bunk assignment. Doc. 16 at 3. In support of this material fact, Defendants cite to the declaration of Grievance Coordinator Lynn Davis. Id. However, Ms. Davis does not make any statement related to the alleged February 22, 2018 grievance, and Defendants did not provide the Court any grievance with that date. See Doc. 16-1 at 7–32.

consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. Id. at 1376. The Court will treat Defendants' failure to exhaust argument as if it were raised under Rule 12(b).

      A.      **Legal Requirements for Exhaustion**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)). Exhaustion is a mandatory requirement, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion irrespective of any special circumstances and its mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Rather, courts may only determine whether

administrative remedies are available and whether the inmate properly exhausted these remedies prior to filing suit.  Id.

Exhaustion must be proper, and proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  The prison's administrative grievance policies delineate what procedural steps prisoners must follow to fully exhaust.  Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison.").  Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.  Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); see also Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012) (affirming dismissal based on lack of exhaustion when plaintiff-inmate failed to file a grievance within 10 days of the incident, as required by Georgia Department of Corrections' policy).

### B.     Coffee Correctional Facility's Grievance Policy

As described in Standard Operating Procedure ("SOP") 227.02, CCF employs a two-step grievance procedure.  Doc. 16-1 at 23.  The first step is an "original grievance," which can be

6

delivered to any Grievance Counselor no later than "ten (10) Calendar Days from the date the [prisoner] knew, or should have known, of the facts giving rise to the grievance." Id. The Warden (or designee) must make a decision regarding the original grievance and deliver the decision to the prisoner who filed it within 40 calendar days from the date the prisoner submitted the grievance form to the Grievance Counselor. Id. at 26. The Warden may make a one-time, 10 calendar day extension to his response deadline; however, the prisoner must be advised in writing of this extension prior to the expiration of the original 40 days. Id.

If a prisoner is dissatisfied with the Warden's decision, he may appeal that decision to the Central Office. Id. A prisoner may only file a "Central Office Appeal" after either: (1) receiving a response to his original grievance from the Warden; or (2) the Warden's time to respond to the original grievance has expired, and the prisoner has not yet received a response. Id. at 27. A prisoner has seven calendar days from the date he receives a response to the original grievance to file a Central Office Appeal. Id. To file a Central Office Appeal, a prisoner must fill out and sign a Central Office Appeal Form and give it to his Grievance Counselor, who will send the appeal and supporting documentation to the "Commissioner's Designee." Id. at 28. The Commissioner (or his designee) has 120 calendar days from the date of receiving the appeal to deliver a decision to the prisoner. Id. SOP 227.02, in use at CCF, provides no further administrative remedies beyond the Central Office Appeal. See Doc. 16-1 at 17–32.

### C. Plaintiff's Attempt at Exhaustion

As noted above, Plaintiff filed Grievance Number 260387, complaining of his top bunk assignment, on February 13, 2018. Doc. 16 at 2. The Warden denied Grievance Number 260387 on February 20, 2018. Id. at 3; Doc. 16-1 at 8. Plaintiff appealed the denial of this

grievance on February 23, 2018.[4]  Doc. 16-1 at 11.  Plaintiff filed this lawsuit on April 2, 2018.  See Doc. 1.  Plaintiff's grievance appeal was denied by the Central Office, and he was notified on this denial on April 11, 2018.  Doc. 16 at 3; Doc. 16-1 at 9.  Plaintiff filed this lawsuit before receiving a response to his Central Office Appeal, and the Commissioner's time for issuing a decision had not yet expired.  "When a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Sewell v. Ramsey, No. 4:06-cv-159, 2007 WL 201269, at *3–4 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).  Because Plaintiff failed to exhaust his administrative remedies before he brought his § 1983 suit, I **RECOMMEND** the Court **GRANT as unopposed** Defendants' construed Motion to Dismiss and **DISMISS** Plaintiff's action.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687,

---

[4]     As noted, Plaintiff appealed the denial of Grievance Number 260387 on February 23, 2018.  Doc. 16-1 at 11.  Under SOP 227.02, the Commissioner would have had until June 23, 2018, to respond to Plaintiff's Central Office Appeal.  Id. at 28.

691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. at 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 4:07-CV-85, 4:03-cr-01, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Defendants' Motion, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT as unopposed** Defendants' construed Motion to Dismiss, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Additionally, I **RECOMMEND** the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

Any party seeking to object to this Report and Recommendation is instructed to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. See 28 U.S.C. § 636(b); Federal Rule of Civil Procedure 72(b)(2). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections. The parties

9

are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 18th day of June, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA